# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **PENN TANK LINES, INC., and,** ] | |
| **GREAT WEST CAS. CO.,** ] | |
| ] | |
| **Plaintiffs,** ] | |
| ] | |
| **v.** ] | **CIVIL ACTION NO.** |
| ] | **2:17-CV-1018-KOB** |
| **PATRICK SHAWN JACKSON,** ] | |
| ] | |
| **Defendant.** ] | |

## MEMORANDUM OPINION

Plaintiffs Penn Tank Lines, Inc., and Great West Casualty Company seek a declaratory judgment holding that non-party decedent Valerie Allen would be immune from a negligence lawsuit contemplated by Defendant Patrick Jackson. Plaintiffs indicate they will have to indemnify Ms. Allen's estate under various contractual agreements with her.

Plaintiffs allege that, while training Mr. Jackson as a truck driver, Ms. Allen may have negligently caused an accident that injured Mr. Jackson. Plaintiffs allege that Mr. Jackson, a Penn employee, applied for and received workers' compensation benefits from them. But now, Plaintiffs allege, Mr. Jackson *might* bring a lawsuit against Ms. Allen's estate in which he *might* allege that Ms. Allen negligently caused his injuries while training him. Plaintiffs want to know whether Ms. Allen would be immune from suit under a defense provided by the Alabama Workers' Compensation Act.

The court finds that Plaintiffs lack standing because, under these circumstances, the mere threatened or potential filing of a lawsuit against Ms. Allen's estate does not harm Plaintiffs'

legally protected interests. Rather, Plaintiffs seek an advisory opinion about the viability of the claimed affirmative defense in a suit that has yet to be filed.

A court always has a duty to inquire into its own jurisdiction, and a court must do so at the earliest possible stage of litigation before taking action on a case. Having made such an inquiry, on its own motion, the court will DISMISS WITHOUT PREJUDICE the complaint for LACK OF JURISDICTION because Plaintiffs' request for a declaratory judgment in truth requests an advisory opinion on the viability of an affirmative defense in advance of a threatened lawsuit; *i.e.*, Plaintiffs' assertion of their affirmative defense in this declaratory judgment action is premature.

Mr. Jackson's "Motion to Dismiss," (doc. 5) which does not raise any jurisdictional issue, is MOOT. Plaintiffs' "Motion for Leave to Amend Their Complaint For Declaratory Judgment By Interlineation" (doc. 8) is likewise MOOT because it would not correct the jurisdictional defects.

Alternatively, if the court had jurisdiction, the court, exercising its discretion under the Declaratory Judgment Act, would decline to hear this case.

## **FACTS**

The court takes the allegations in the complaint as true for purposes of examining its jurisdiction. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990).

Valerie Allen was a truck driver. In 2011, Ms. Allen and Penn entered into a contractual relationship. Essentially, the contracts contemplated that Ms. Allen would lease her truck to Penn and then drive it "in furtherance of [Penn's] primary business." (Doc. 1 ¶ 8).

The contracts included an insurance provision in which Penn would, at its own expense, provide public liability insurance to protect Ms. Allen and Penn from potential suits "arising out

of the operation of equipment covered" by the agreements. To comply with this provision, Penn

acquired a policy with Great West. That policy insured Penn and Ms. Allen for injuries "to a

member of the general motoring public that resulted" from Ms. Allen's use of the truck "in

furtherance of" Penn's shipping business. (Doc. 1 ¶ 11).

Defendant Patrick Jackson wanted to be a truck driver. In 2016, Penn hired Mr. Jackson

as a driver-in-training. Penn paid Mr. Jackson hourly wages and covered Mr. Jackson pursuant

to Alabama's workers' compensation plan.

Penn contracted with Ms. Allen to train Mr. Jackson. Ms. Allen trained Mr. Jackson for

"approximately three weeks" until March 30, 2016. On that afternoon, Ms. Allen using her

truck, with Mr. Jackson observing as a passenger, was to deliver a "commercial bulk petroleum

tanker containing more than 8,000 gallons of motor fuel" to a gas station serviced by Penn.

On the way, they had a wreck. Ms. Allen died. Mr. Jackson survived, but suffered

several injuries in the crash, including road rash, "a possible rotator cuff injury," and a neck

injury that ultimately required surgery.

Mr. Jackson applied for and received workers' compensation benefits from Penn and

Great West, which provided Penn's workers' compensation insurance. Mr. Jackson has received

"approximately $70,000 in workers' compensation benefits, covering both medical benefits and

lost wages."

Now, in addition to the workers' compensation benefits, according to the complaint, Mr.

Jackson is "explor[ing] the possibility of bringing a tort claim against" Ms. Allen as a purported

additional insured under Penn's liability policy with Great West, contending that Ms. Allen

negligently operated the truck, causing his injuries. (Doc. 1 ¶ 18). Plaintiffs understand that Mr.

Jackson is preparing a civil tort complaint "with imminent plans to file" it. (*Id.* ¶ 24).

Penn and Great West, who apparently must indemnify Ms. Allen's estate if Mr. Jackson brings the threatened lawsuit, think that Ms. Allen would be immune under the Workers' Compensation Act. Specifically, they claim that Ms. Allen was acting as Penn's "agent" during the accident and would thus be immune from workplace injury lawsuits because workers' compensation provides the exclusive remedy for an injured employee. *See* Ala. Code § 25-5-53. Mr. Jackson, on the other hand, contends that Ms. Allen was not Penn's agent, but an independent contractor not covered under the Workers' Compensation Act. (Doc. 5 at 1-2).

Substantively, the case turns on the meaning of the word "agent" in the Act and how that term applies to the contractual relationship between Ms. Allen and Penn. (*See* Doc. 1 ¶ 22). In this case, Penn and Great West do not contest whether they must defend or indemnify Ms. Allen's estate if a lawsuit is brought against it for her actions; only that, if a lawsuit is brought against the estate, that lawsuit must be dismissed based on Ms. Allen's immunity.

## DISCUSSION

Obliged to inquire into its own jurisdiction, the court finds that no justiciable controversy exists. *See Fitzgerald v. Seaboard System R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir. 1985) ("A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises.").

The Declaratory Judgment Act does not provide a method whereby a federal court must decide all disagreements. Instead, "[i]n *a case of actual controversy* within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought . . . ." 28 U.S.C. § 2201(a). The "actual controversy"

requirement under the Declaratory Judgment Act is coextensive with Article III's case or controversy requirement. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937).

That requirement "limits the jurisdiction of the federal courts to actual cases or controversies." *Florence Endocrine Clinic, PLLC v. Arriva Medical, LLC*, 858 F.3d 1362, 1365 (11th Cir. 2017). In short, as the Supreme Court explained, this court cannot address a hypothetical situation: "[A] federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before them.' Its judgments must resolve 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (quoting *Haworth*, 300 U.S. at 240-41). The existence of an actual controversy "is determined on a case by case basis" based on the totality of the circumstances. *See Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995).

"For a controversy to exist, 'the facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Atlanta Gas Light Co.*, 68 F.3d at 414 (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

One element in the case-or-controversy analysis includes the plaintiff's standing to sue. *Spring Communications Co., L.P. v. APCC Servs. Inc.*, 554 U.S. 269, 273-74 (2008). The plaintiff must establish "(1) an injury in fact (*i.e.*, a concrete and particularized invasion of a legally protected interest); (2) causation (*i.e.*, a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.*, it is likely and

not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)." *Id.* (quotation marks omitted).

The court finds that no such injury-in-fact exists under the facts plead in the complaint. Plaintiffs base their claim to relief on Ms. Allen's alleged immunity under the Workers' Compensation Act, which they say will defeat any suit Mr. Jackson may file against her. But Plaintiffs misunderstand this alleged right to immunity. Even assuming that the immunity contemplated by the Act is, as Plaintiffs claim, "immunity from suit" akin to qualified or absolute immunity, Plaintiffs would not suffer an injury by Mr. Jackson's mere filing of a suit against Ms. Allen. They simply would assert the workers' compensation immunity as an affirmative defense to it. And the court hearing that case, with all facts available to it, will determine the merits of that defense.

The court cannot find any reason why waiting until a suit is filed against Ms. Allen to raise this defense invades Plaintiffs' legal rights. Plaintiffs do not face the classic declaratory-judgment dilemma where they must choose between exposing themselves to liability or abandoning their legal rights. *See, e.g.*, *Prudential Ins. Co. of Amer. v. Boyd*, 781 F.2d 1494, 1496 (11th Cir. 1986) (involving life insurer faced with conflicting claims); *GTE Directories Pub. Corp. v. Trimen America, Inc.*, 67 F.3d 1563, 1569 (11th Cir. 1995) (noting the "familiar type of suit in which a liability insurer seeks a declaration that it will not be liable to indemnify an insured person for any damages the injured person may recover against the insured . . . ."). Stated another way, waiting until Mr. Jackson files the lawsuit he *might* file would not increase Plaintiffs' losses nor force their exposure to more liability.

To be sure, a defendant's right to immunity should be decided as early as possible in a case to give effect to the right and prevent that defendant's accrual of unnecessary litigation

expenses. But the court can find no case where a declaratory-judgment plaintiff has successfully sought to preemptively exercise claimed immunity before facing a lawsuit for a tort that has already occurred. Rather, courts treat immunities as affirmative defenses to be raised once the party claiming it is sued. *See, e.g.*, *Bechtel v. Crown Central Petroleum Corp.*, 451 So. 2d 793, 795 (Ala. 1984) ("[W]e hold that the defense of statutory employer immunity is an affirmative defense in Alabama, and is subject to the pleading requirements of Rule 8(c) and the case law regarding such a defense.").

The only advantage Plaintiffs gain in this case is that they get to make the allegations and determine the parties; but a declaratory-judgment plaintiff cannot use the Declaratory Judgment Act to race the defendant to the courthouse door in this manner. *See* Wright & Miller § 2758, at 631-632; *cf. Public Service Commission of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 246 (1952) ("[W]hen the request is not for ultimate determination of rights but for preliminary findings and conclusions intended to fortify the litigant . . . it would be a rare case in which the relief should be granted.").

Plaintiffs seem to recognize their complaint's tenuous Article III footing in their response to Mr. Jackson's motion to dismiss, as they devote significant time to defending this case's justiciability, an issue Mr. Jackson does not raise. Although Plaintiffs contend that hearing this case would be beneficial because a preliminary ruling would expedite settlement discussions and "hopefully" preclude the contemplated tort lawsuit, expediency and judicial economy are not "injuries" upon which a plaintiff can base standing. *Cf. Calderon v. Ashmus*, 523 U.S. 740, 746 (1998) (indicating that "attempts to gain a litigation advantage by obtaining an advance ruling on an affirmative defense" through the declaratory-judgment process will typically be non-justiciable); *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 809-10 (Fed. Cir. 1996) (recognizing

that declaratory relief actions are inappropriate when filed merely to improve a bargaining position in ongoing negotiations), *overruled in part on other grounds*, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007).

Finally, even if Plaintiffs had standing to pursue this declaratory judgment action, the court would decline to hear it. *See Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942); *see also Public Affairs Associates, Inc. v. Rickover*, 369 U.S. 111, 112 (1962) ("The Declaratory Judgment Act was an authorization, not a command. It gave federal courts competence to make a declaration of rights; it did not impose a duty to do so.").

The Eleventh Circuit has enumerated several factors the court should consider when deciding whether to exercise jurisdiction under the Declaratory Judgment Act. The factors relevant to this case include: (1) whether the federal declaratory judgment would settle the controversy; (2) whether the federal declaratory action would serve a useful purpose; and (3) whether the declaratory remedy is being used for "procedural fencing," *i.e.*, to achieve a federal hearing in a case otherwise not removable. *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (listing the non-exclusive factors and observing that not every factor will be relevant in every case); *First Mercury Ins. Co. v. Excellent Computing Distributors, Inc.*, 648 Fed. App'x 861, 865-66 (11th Cir. Apr. 20, 2016) (observing that the *Ameritas* factors apply even in the absence of a parallel state court proceeding).

The court finds that declaratory relief serves no useful purpose in this action because, as noted above, Plaintiffs can obtain the same relief by filing a motion to dismiss invoking immunity if Mr. Jackson brings his lawsuit against the estate. *See Angora Enterprises, Inc. v. Condominium Ass'n of Lakeside Village, Inc.*, 796 F.2d 384, 387-88 (11th Cir. 1986) (observing

that a court may refuse declaratory relief if an alternative remedy exists that is better or more effective).

In sum, a decision by the court in this case would be a superfluous preliminary ruling on a state-law issue that may arise in a yet-to-be-filed suit over which this court is unlikely to have subject-matter jurisdiction. Accordingly, even if Plaintiffs had standing to pursue this lawsuit, the court would decline to exercise jurisdiction under these circumstances.

The complaint will be DISMISSED WITHOUT PREJUDICE for LACK OF JURISDICTION. The pending motions are MOOT. A final order will be entered contemporaneously with this Memorandum Opinion. Dated this 18th day of January, 2018.

<br>

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE